The next case today is Andrea Rose v. RTN Federal Credit Union, Appeal Number 20-1470. Attorney Moslinger, please introduce yourself for the record and proceed with your argument. Good afternoon, Your Honors. Raven Moslinger for the appellant, Andrea Rose. May it please the Court, before I start, if I could reserve two minutes for rebuttal. Yes. Thank you, Your Honor. So this case presents a question of whether or not the courthouse doors are open to union employees who have wage and hour claims that arise exclusively under state wage and hour regulations and where a collective bargaining agreement must only be consulted for computing damages. Haven't we decided this issue? We have said pretty clearly in Adamus and in Cavallaro, in both of those cases, that state statutory or regulatory wage and hour claims are generally subject to LMRA preemption so long as those claims are intertwined with an analysis or interpretation of the collective bargaining agreement. Unless you have some reason to give us to doubt the authority of those cases, shouldn't you be focused on the question of whether, in this case, the state statutory claim is what we referred to in Cavallaro as an entangled claim or one that merely, in your words, requires us to consult the CBA, not to interpret or analyze it? Absolutely, Your Honor, and I agree that Cavallaro is certainly a relevant case, but in that case, this is not Ruelli either. In Cavallaro, there is a question over whether or not certain work hours were compensable and the court would have to interpret the collective bargaining agreement in that case because, for example, whether or not training programs were compensable under the collective bargaining agreement depending on whether the employee had timely submitted a request within the meaning of the collective bargaining agreement. Similarly, there is a question over whether or not meal times were compensable and that turned on interpretation under the collective bargaining agreement whether or not the nurses had remained in patient care areas. In Ruelli, there was another issue with respect to constructive knowledge of hours worked, which depended on interpreting the obligations of the employer under the collective bargaining agreement. And so what's different about this case, Your Honor, and what I would submit, Your Honor, is if this case cannot survive complete preemption, then no wage in our case can. Well, we have said in, I think it was in Adamus, that virtually all wage in our claims under state law will be subject, in the collective bargaining environment, will be subject to LMRA preemption. So there would be no surprise if virtually no case survived. And let me follow up on Judge Selya. If somebody is subject to a CBA, collective bargaining agreement, then Cahuillaro and the LMRA would apply. My take is that this regulation applies if there's no CBA. Am I correct? Well, the regulation applies regardless of whether or not there's a CBA because it's a non-waivable wage and hour right. So unless the CBA clearly and unmistakably waives that right, it exists independent of the collective bargaining agreement. No, but it's not independent of the CBA. It becomes a federal right. That's what Cahuillaro says. Correct. That's what I'm asking. Well, Your Honor, what I would point the court to is a slightly more recent decision from this court in the Labor Relations Division of Construction Industries case in Massachusetts. It addressed the earned sick time law in Massachusetts. And what this court said following the Levada Supreme Court case was that, and I'm paraphrasing here, where the liability portion of a claim is governed by independent state law, there is no reason to hold the state law claim defeated by Section 301 in such cases, even if the need arises to look at the collective bargaining agreement to calculate an employee's hourly rate for the purposes of calculating her damages. And what I would submit, Your Honor, is that's this case because the regulation is independent of the collective bargaining agreement. That generates the liability in this case, is whether or not Ms. Rose was regularly working at one site then required to go to another site and whether or not she was compensated for the excess commute time. Excuse me. Don't we have to consult and interpret the CBA to determine the nature of her work at the second location? Because the CBA in this case contains transfer provisions, transfers to fill temporary vacancies and the like. And don't we have to interpret those provisions to see how this should get treated? Because under those provisions, this may wind up getting treated as a regular place of business rather than something else. Well, Your Honor, I think the Massachusetts Appeals Court has spoken on this particular issue and has said fairly unequivocally that it's not really the possibility of potentially getting transferred. I'm not talking about the possibility. I'm talking about what happened in this case. I'm struggling with the notion of how we characterize what happened to Ms. Rose. Was she simply asked to report to work at somewhere other than her duty station? Or was what happened to her something that would be characterized as filling a temporary vacancy under the CBA? And if so, what consequences would that have? I don't know the answers to those questions, but I do know that this CBA, which I've looked at, not in detail but briefly, contains provisions governing transfers, both permanent transfers and temporary transfers. Right, but ultimately, I don't think there's anything in the CBA that would need to be interpreted that would affect the claim because it would just matter whether or not it's... How do we know that? Must we read the CBA and interpret it? Well, Your Honor, the court... Well, I think it's the defendant, the appellee's obligation to say to the court, because they're the one invoking the court's jurisdiction, to say, this needs to be interpreted, and specifically, this is why. And I see no reason why it would have to be interpreted. Of course, the court has to always... You know, anytime these arguments are raised, the court has to look at the CBA to see whether or not the defendant is correct in claiming that something needs to be interpreted. But, Your Honors, what I would submit is that this case is... The liability does not turn on the collective bargaining agreement. It matters just objectively how long she was working at a site and then whether or not she was asked to work somewhere else and whether or not that resulted in excess commute time from her home and whether or not that was compensated. And so the liability here falls squarely within the ambit of the regulation and it does not turn on the collective bargaining agreement. Let me also ask you this. Wouldn't, you know, if there is preemption in the case, you know, it's LMRA, as the judge, Judge Young, ordered, it's going to arbitration. You can still bring your claim in arbitration and present there, can't you? Well, that's the other fundamental problem here, is that this court has said that LMRA preemption, complete preemption, is only appropriate if the grievance and arbitration provision at issue is broadly phrased and relief can be provided within the CBA process. Now, if you look at the provision here, it says that any differences as to the interpretation of the agreement go to arbitration. And what I would submit is there isn't a difference in interpretations of the collective bargaining agreement here. What would Ms. Rose file as far as a grievance? She couldn't file a grievance and say, well, you didn't pay me for the excess travel time and the related expenses, because that's not an interpretation that falls under the agreement. There's no right under the agreement to that. So essentially, if she shut out of the court... But you're assuming questions that can't be decided on the basis of what we have, because we don't know. But the employer, for example, might very well say, well, we're not obligated because this was a temporary transfer, and the way the CBA works on the temporary transfers,  or her overtime entitlement is computed differently. I don't know the answer to any of those questions, but I do know that I have to interpret the CBA to find them out. Well, respectfully, Your Honor, I disagree that anything in the CBA needs to be interpreted with respect to that, because the transfer issue... Again, the CBA provides a right to transfer. No, it doesn't. It provides more than a right. It governs when the employer can transfer people involuntarily and in what order those transfers may be made, and it has consequences for both the employer and the transferred individual. I've read that much to know that that's so. Right, Your Honor, and I don't know that I would say anything differently, but what I would submit is then what matters is the facts on the ground. Again, that relates to the possibility of a transfer and the reasons why you might transfer, but the actual question is whether or not it was temporary or not, and the authority to transfer someone does not matter. What matters is the time period. If ultimately she's working at a site regularly for a year, and then she's transferred somewhere for two weeks, then that implicates the regulation. It doesn't matter whether or not the employer used the right authority or what procedures they used or whatever. What matters for liability is the fact that it happened. Again, I don't see any reason why the CBA would have to be interpreted here, and just the authority from this circuit and the Supreme Court is not so broad as to preempt virtually every single wage and hour claim that comes through the door. As I noted before, this Court's been very clear that if the state law governs liability and the only thing you need to look at is the CBA for purposes of computing damages, then that's not a claim that ought to be preempted. I would, again, point to the grievance procedures and note to the Court that if she does not have a forum here, I don't think she has a forum. She can't file a grievance over this. There's essentially no forum. Thank you. You've reserved some time. You would mute your devices. We'll hear from Mr. O'Connell. Thank you, Your Honors. May it please the Court, Liam O'Connell on behalf of RTN Federal Credit Union. If I might, Your Honors, let me just briefly address the second issue and the last issue that we were discussing that counsel just ended on, which is the arbitration and grievance procedure. As the Court knows, the boundaries for arbitration within the labor law context are quite broad. The powers of an arbitrator are quite broad to fashion relief. This is a very broad arbitration provision. In fact, the language that was cited by counsel is quite broad. It captures not just a direct violation of the CBA, but even an interpretation of the CBA. It certainly would be RTN Federal Credit Union's position that Ms. Rose could have grieved and arbitrated this on any number of fronts, alleging that somehow the transfer provisions within the CBA that are contained in a couple of different areas, including the manager rights provision, were violated or inappropriately used by the company. Moreover, there are provisions within the contract that relate to both hours of work as well as overtime pay. If an employee and the union representing that employee believe that they were not being properly compensated for the hours of work or that there was a violation in the hours of work provision because too many hours were being required and or they were not being properly compensated because they weren't being paid for overtime work, those hours, in this case, more than eight in a day, which is not a function of law here in the Commonwealth, but eight in a day under the contract and or 40 in a work week, that absolutely could have been grieved and can be grieved and arbitrated. And the question could be put to an arbitrator what the appropriate remedy would be, which would include all those remedies that theoretically the plaintiff would be entitled to in a state court action. It's well established that the mass wage statute doesn't guarantee any particular venue. And the Dixon case tells us that an arbitrator can award damages essentially under the wage statute through arbitration. Let me ask you, so what you're saying is that before the arbitrator, under the CBA, the plaintiff, Ms. Rose, perhaps, not perhaps invoke the Massachusetts regulation, but can invoke similar or analogous remedies and could get the same remedy, further remedy, could get lesser remedy, but she will have a forum. That's what you're saying, correct? Absolutely, Your Honor. That would be our position. In labor arbitrations, typically there's an issue that's identified. Did the company or did the employer violate the collective bargaining agreement by doing X, Y, and Z? In this case, it could be, as I said, overtime, the hours of work, the way she was transferred. And if so, if an arbitrator determines that that was the case, then the second question is, what shall be the remedy? So there is not the issue of waiver of state law rights that counsel has cited in the briefing that somehow she would not have an avenue. So that, in a sense, is the second issue that I think is dispositive of the case. Once we address the first issue, really, which is the federal jurisdictional issue, which we also think falls under the 301 Complete Preemption Doctrine that we've discussed. The regulation upon which all four counts of the complaint are based requires a threshold finding or an establishment that the employee regularly worked at a fixed location and was required to report to a site other than the regular work site. That is a threshold determination that needs to be made. In order to make that determination for this type of claim, you've got to go to the CBA, because the CBA controls how and where employees can be moved. And, you know, as Your Honor noted, we don't know how that comes out in an arbitration, but clearly you would have to interpret the provisions of the CBA to make that kind of determination. It's not just fait accompli that she has a fixed location. And, in fact, there's very little Massachusetts case law on this regulation, but the one case that we did cite, both counsel, and that does get into this a bit is the Taggart case. And what that case really tells us is when we're making determinations on what the definition of fixed location is, it's not defined within the reg, and we may need to look to the particular facts of this case. We may need to look to the industry in which this is being operated. And, for example, in that case, the assignment for 12 weeks was deemed to be fixed, right? So there was an assessment as to that's not where they usually work, but they were transferred down there for 12 weeks, so the court decided that or determined that that was a fixed location for purposes of the statute. That kind of analysis in this case would absolutely, we think, require interpretation of the CBA. And on those grounds, I think it's under well-established precedent in the circuit, the Eddams case, the Rowley case, as well as Cavallaro, that this would be completely preempted under Section 301. Additional questions from the court? No. All right. Thank you, Mr. O'Connell. Thank you, Your Honor. Mr. Moslinger, you've reserved two minutes. Yeah. Just very briefly, Your Honor. So, first, the existence of additional remedies under the CBA does not result in preemption. The Supreme Court's been very clear about this. It said in Lingle, you know. But I don't think that's what your brother counsel said. I think he pointed out that there may be additional remedies under the CBA. He didn't say that that was what created preemption in this case. Okay. Fair enough. He said that your wage and hour claim could be enforced in arbitration. Well, I appreciate that defense counsel has taken that position now, you know, a couple years after the case has been filed. But when we file the case, we're stuck with the collective bargaining agreement as it's drafted. And as drafted, it says, any differences as to the interpretation of the agreement. The agreement does not provide for the remedies that are being sought. No, it doesn't. And I don't want to sound like a broken record, but the agreement does govern transfers. And we've got to find out if this is a temporary transfer, permanent transfer, how those terms are employed. Otherwise, we don't know if the wage statute applies to your client. Well, Your Honor, what I would again suggest, and I also don't want to be a broken record, but the Taggart decision, which is the only authority and it's appellate authority from Massachusetts that addresses this regulation, makes clear that the possibility of a transfer, the provisions addressing transfer don't matter. What matters is the facts on the ground, whether or not you were there for a while. But Taggart isn't faced with the same question, the same question of federal labor law that we are. Taggart's a state court decision, isn't it? It is absolutely a state court decision, but we brought suit under a state. I know that, but the case is removed now, and we have to apply our precedent to this. And the Supreme Court has not given us a lot of guidance. If Novartis, as I think it is, is the latest Supreme Court decision that really is relevant here, our decision in Cavallaro postdates Novartis, and the Cavallaro panel, Judge Boudin's opinion, interprets what Novartis means for claims such as regulatory and statutory wage claims. Right. And, Your Honor, I point to this court's subsequent decision in the Labor Relations Division of Construction Industries case, which I think is on point. And while it's something that's outside of this jurisdiction, the most factually similar case that we cited was the Burnside v. Hewitt Pack Corporation case out of the Ninth Circuit, which also addressed an independent travel time claim and a related overtime claim and found that that preemption was not appropriate. But other than that, Your Honor, I will rest on our brief. Thank you, Counsel. Thank you both. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the hearing at this time.